UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALISON JENKINS,

                Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-3192 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Alison Jenkins brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. Plaintiff seeks an order remanding this matter solely for the calculation of benefits or, in the alternative, remand of this matter for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion, denies the Commissioner's cross-motion, and remands this matter for further administrative proceedings.

## BACKGROUND

### I. Procedural History

      On June 18, 2014, Plaintiff filed applications for DIB and SSI, alleging disability beginning on February 6, 2014. (Administrative Transcript ("Tr."[1]), Dkt. 7, at 314, 316.) On January 27,

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

1

2015, Plaintiff's applications were initially denied. (*Id.* at 186–90.) Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 208–09.) On June 26, 2017, Plaintiff appeared with counsel before ALJ Thomas Grabeel (*id.* at 60–74), who issued a fully favorable decision on August 9, 2017 (*id.* at 170–79). On October 6, 2017, the Appeals Council of the SSA's Office of Disability Adjudication and Review ("Appeals Council") found that ALJ Grabeel's decision was "not supported by substantial evidence and [that] there [was] an error of law." (*Id.* at 250.) Plaintiff's case was remanded to another ALJ on January 17, 2018 (*id.* at 180–84), and Plaintiff appeared for a hearing before ALJ Jay Cohen on July 5, 2018 (*id.* at 35–59). In a decision dated August 15, 2018, ALJ Cohen determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for the benefits for which she had applied. (*Id.* at 7–19.) On May 15, 2019, the ALJ's decision became final when the Appeals Council denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) Thereafter, Plaintiff timely[2] commenced this action.

---

[2] According to Title 42, United States Code, Section 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on May 20, 2019, and that the instant action, filed on May 29, 2019—9 days later—is therefore timely. (*See generally* Complaint, Dkt. 1.)

## II. The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled.

In this case, the ALJ found that Plaintiff suffers from the following severe impairments: "lumbar spine herniation and bulge, obesity, major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder." (Tr., at 13 (citations omitted).) The ALJ then progressed to the third step and determined that Plaintiff's severe impairments, either singly or in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)" (the "Listings"). (*Id.*) Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[3]

> to perform light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is capable of lifting/carrying twenty pounds occasionally and ten pounds

---

[3] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[4] According to the applicable regulations,

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted

3

> frequently. She is able to sit, stand/walk for six hours each in the course of an eight-hour day. The claimant is limited to performing simple, routine tasks with occasional contact with the public, no requirement to make discretionary job related decisions, or engage in job related potential conflict situations or be subject to production quotas or be exposed to loud noises.

(*Id.* at 14–15.) Based upon this RFC finding, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a security guard, but that she was capable of performing certain jobs that exist in significant numbers in the national economy, such as "Garment Sorter," "Paper Pattern Folder," and "Fruit Cutter." (*Id.* at 18–19.) The ALJ accordingly concluded that Plaintiff was not disabled. (*Id.* at 19.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). "In determining whether the [Commissioner]'s findings were supported by substantial evidence, the reviewing

---

> may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

4

court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision." (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld," *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

## DISCUSSION

Plaintiff argues that the ALJ improperly (1) dismissed the opinions of Plaintiff's treating sources, (2) failed to order a psychological consultative examination, (3) predicated his findings solely on the opinion of non-examining physicians, and (4) elicited the testimony of a vocational expert predicated on those findings. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem."), Dkt. 9-1, at 5–8.) The Court finds that remand is warranted because the ALJ accorded significant weight only to the opinions of non-treating sources without soliciting the opinions of Plaintiff's treating psychiatrists, in violation of the treating physician rule and in contravention of the ALJ's affirmative duty to develop the record.[5] The Court further finds that the ALJ improperly discounted Plaintiff's hearing testimony.

---

[5] Vocational expert ("VE") Mitchell A. Schmidt appeared before the ALJ (Tr., at 10) and answered a number of questions regarding the ability of persons of the same age, education, work history, and limitations as Plaintiff to perform Plaintiff's past relevant work (*id.* at 55–57). Plaintiff

5

I.      The ALJ's RFC Determination

The ALJ's RFC determination considered Plaintiff's hearing testimony, the hearing testimony of a non-examining medical expert, the opinions of two state agency non-examining consultants, and a number of Plaintiff's treatment notes. (Tr., at 15–17.) Non-examining medical expert Sharon Grand, Ph.D., testified at the July 5, 2018 hearing that Plaintiff

> would be limited to work that is simple and routine, not necessarily repetitive. No more than occasional contact with the public. She would be — she would not be able to work in an area where there is loud noise on a consistent basis, and she would need work that is low stress.

(*Id.* at 52.) Dr. Grand did not "see something in the record that would contraindicate that" Plaintiff would be able to perform "simple and routine tasks[] for eight hours a day, five days a week on a consistent basis." (*Id.* at 53.) In his RFC determination, the ALJ summarized the testimony of Dr. Grand and, in finding that Plaintiff is capable of performing light work, the ALJ "place[d] significant weight in the testimony of Dr. Grand" because "[s]he is a licensed psychologist who is fully familiar with the Social Security program and the Listing of Psychiatric impairments. She has made a comprehensive and cogent analysis of the psychiatric record, and has cited to the clinical findings in various exhibits. Her opinion is supported by the record." (*Id.* at 17.)

The ALJ "also place[d] significant weight in the opinions of the reviewing psychologists for the State Agency" because "[t]he record support[ed] their assessments as to [Plaintiff's] ability to perform mentally related work activities." (*Id.*) Neither consultant psychologist personally

---

argues that the ALJ "elicited the testimony of a vocational expert predicated on" the non-examining expert's findings. (Pl.'s Mem., Dkt. 9-1, at 8.) "The Court is not in a position to evaluate this argument," as "this case [must] be remanded because of an incorrect application of the treating physician rule and for further development of the record." *Hidalgo v. Colvin*, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at *21 (S.D.N.Y. June 25, 2014). "Once the perceived inconsistencies in the record have been cleared and the relative weights of the [medical] opinions . . . are clarified, any hypothetical posed to the vocational expert must be adjusted to match the evidence in the record." *Id.*

6

evaluated Plaintiff, and each reviewed Plaintiff's psychiatric records only on one occasion—Damarys Sanchez, Psy.D., on October 2, 2014 (*id.* at 97), and K. Lieber-Diaz, Ph.D., on July 2, 2015 (*id.* at 142). Dr. Sanchez assessed Plaintiff as having a mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and as experiencing no repeated episodes of decompensation. (*Id.* at 97.) Dr. Sanchez also opined that Plaintiff remained mentally functional as Plaintiff could understand, remember, and carry out simple instructions; perform routine tasks; cooperate with the public and her coworkers; and adjust to the demands of most new work settings. (*Id.* at 104.) On July 2, 2015, Dr. Lieber-Diaz reviewed the record evidence and opined that Plaintiff experienced a mild restriction in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (*Id.* at 142.) Dr. Lieber-Diaz found that the record contained insufficient evidence of a psychiatric impairment as of March 31, 2014. (*Id.* at 160.)

In his review of Plaintiff's psychiatric treatment notes, the ALJ also discussed records from 2014, 2015, and 2017, as well as a portion of the treatment notes from Shama Saqi, M.D., Plaintiff's treating psychiatrist in 2016 and 2017. (*See id.* at 16–17.) The ALJ concluded generally that the "[p]sychiatric treatment notes from various treatment facilities have reflected a normal mood and affect." (*Id.* at 17.)

## II. Treating Physician Rule

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[6] of deference to the views of the physician who has engaged in the primary

---

[6] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations apply only "to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290

7

treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation, alterations, and citations omitted). Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2). If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Courts in this Circuit "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion[.]" *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2003).

Plaintiff argues that "the ALJ dismissed the opinion of [Plaintiff's] treating sources," in violation of the treating physician rule. (Pl.'s Mem., Dkt. 9-1, at 8.) The Court agrees and finds remand warranted because the ALJ discounted the assessment of one of Plaintiff's treating psychiatrists without explanation, did not affirmatively develop the medical opinion evidence to include assessments from Plaintiff's other two treating psychiatrists, and instead relied entirely on the medical opinions of non-examining sources, on which he placed significant weight.

---

(EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c). Because Plaintiff's claim was filed on June 18, 2014 (Tr., at 129), the treating physician rule applies.

A.  Dr. Saringer and LMSW Espínola

The ALJ's RFC determination summarized exhibits from the psychiatric record, including reports from Plaintiff's treating psychiatrist at Sanctuary for Families,[7] Magdolna Saringer, M.D. (Tr., at 16–17.) On May 18, 2015, Dr. Saringer noted that Plaintiff had been under her care for depression, anxiety, and post-traumatic stress disorder ("PTSD"), that Plaintiff was participating in weekly trauma-focused therapy, that Plaintiff was taking medication daily, and that Plaintiff continued to display symptoms of anxiety, panic, and mood dysregulation. (*Id.* at 588.) In a June 22, 2015 note, Dr. Saringer opined that, based on her clinical assessment, Plaintiff would be unable to work for at least 12 months. (*Id.* at 602.) The ALJ also referenced a report from Plaintiff's treating social worker at Sanctuary for Families, Alison Espínola, LMSW (*id.* at 17), who wrote that Plaintiff entered the Sanctuary for Families program on February 25, 2015, and stated that Plaintiff "suffer[ed] from anxiety that [was] often debilitating," which decreased her concentration and caused problems sleeping (*id.* at 603). LMSW Espínola added that Plaintiff was "diligent in attending and following up with her medical appointments" but that, "due to her anxiety, [Plaintiff] does not feel mentally or emotionally able to hold a steady job." (*Id.* at 604.) The ALJ did not indicate what, if any, weight he accorded to the opinions of Dr. Saringer and LMSW Espínola.

B.  Non-Examining Medical Opinions

   1.  Dr. Grand

However, the ALJ accorded significant weight to Dr. Grand's opinion, noting that Dr. Grand had reviewed Plaintiff's "psychiatric record" and "cited to various exhibits in the record to

---

[7] Sanctuary for Families is a New York-based "service provider and advocate for survivors of domestic violence, sex trafficking and related forms of gender violence." *Transforming Lives, and Ending Gender Violence*, SANCTUARY FOR FAMILIES, https://sanctuaryforfamilies.org/about-us/ (last visited Sept. 22, 2020).

9

support her position." (*Id.* at 16.) The Court finds that the ALJ's nearly complete deference to the opinion of Dr. Grand was in error, especially where the ALJ did not provide any substantive explanation as to why Dr. Grand's opinion deserved greater weight than the clinical assessment of Dr. Saringer, Plaintiff's treating psychiatrist. "A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Stewart v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-1287 (KAM), 2020 WL 4904583, at *7 (E.D.N.Y. Aug. 20, 2020) (quoting *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987)). Moreover, the ALJ did not conduct any of the analysis required by the treating physician rule, *i.e.*, discussing the factors in 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

Accordingly, the Court finds that the ALJ erred in according significant weight to the opinion of non-examining psychologist Dr. Grand over that of treating psychiatrist Dr. Saringer without further explanation.[8]

### 2. State Agency Reviewing Psychologists

The Court similarly finds that the ALJ erred by "plac[ing] significant weight in the opinions of the reviewing psychologists for the State Agency." (Tr., at 17.) Drs. Sanchez and Lieber-Diaz did not examine Plaintiff, and each reviewed the entirety of Plaintiff's psychiatric records only once, in October 2014 and July 2015, years which precede much of Plaintiff's psychiatric

---

[8] The Court notes that the ALJ need not have accorded controlling weight to the opinion of LMSW Espínola. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (including "licensed clinical social workers" in list of "[m]edical sources who are not 'acceptable medical sources'"). Under the treating physician rule, the opinions of non-acceptable medical sources are not eligible for "controlling weight," although they may still be given some weight according to the factors outlined in 20 C.F.R. § 404.1527(c). *See Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (summary order) (citing, *inter alia*, 20 C.F.R. §§ 404.1513(a), (d)(1), 404.1527(a)(2), (c); SSR 06-03p, 2006 WL 2329939, at *4–5).

10

treatment as included in the record. As discussed above, the ALJ also did not explain pursuant to the requirements of the treating physician rule why the opinions of these non-examining sources warranted greater weight than the opinion of Plaintiff's treating psychiatrist, Dr. Saringer.

    C.    **Plaintiff's Other Treating Psychiatrists**

The ALJ's erroneous reliance on the opinions of non-examining sources was exacerbated by the ALJ's failure to accurately summarize and address treatment notes in the record from two of Plaintiff's treating psychiatrists. The ALJ's RFC determination referred generally to "[p]sychiatric treatment notes from various treatment facilities," and concluded from them that Plaintiff had "a normal mood and affect." (*Id.*) The Court notes, as an initial matter, that two of these psychiatric assessments were completed as part of general examinations and were not conducted by Plaintiffs' treating psychiatrists. First, the September 22, 2014 notes by Diely Pichardo, M.D., describe a general follow-up examination for Plaintiff's breast cancer treatment. (*Id.* at 510–11.) Unmentioned by the ALJ are the portions of Dr. Pichardo's treatment records that note Plaintiff's history of "anxiety disorder" and that Plaintiff "took a Xanax because she was feeling a panic[] attack starting while in the waiting room." (*Id.* at 511.)[9] Dr. Pichardo further described Plaintiff's "[h]istory of anxiety, on Xanax and Effexor" in the "assessment/plan" section of the progress note. (*Id.* at 513.) Second, the ALJ cited notes from a 2014 Emergency Room visit to support his conclusion that Plaintiff had a normal affect. (*Id.* at 17; *see also id.* at 533 (indicating "nml orientation," "nml speech / cognition," and "mood / affect nml").) These records

---

    [9] The ALJ also concluded from Dr. Pichardo's notes that Plaintiff "denied significant depression or anxiety." (*Id.* at 17.) In so concluding, the ALJ seems to have focused on a brief note: "PSYCH: [Plaintiff] [d]enies significant depression or anxiety" and the physical examination finding that "[Plaintiff's] [m]ood and affect appear normal." (*Id.* at 512.)

11

are, similarly, not part of a psychiatric assessment, but rather a single examination where Plaintiff was admitted with chief complaints of "dizziness" and "weakness." (*Id.* at 532.)

### 1. Dr. Saqi

The ALJ's RFC determination discussed treatments notes from Dr. Saqi, Plaintiff's treating psychiatrist at Rego Park Counseling Center. (*Id.* at 17.) As referenced by the ALJ, Dr. Saqi saw Plaintiff on June 22, 2016 and observed that Plaintiff had "an anxious mood, but was otherwise within normal limits." (*Id.* (record citation omitted).) The ALJ noted that, at Dr. Saqi's "subsequent examinations [on] August 3, 2016, August 31, 2016, January 4, 2017, and . . . June 7, 2017, [Plaintiff]'s affect was appropriate and mood euthymic." (*Id.* (record citations omitted).) The Court summarizes the entirety of Dr. Saqi's treatment notes below.

Dr. Saqi first saw Plaintiff for an examination on May 23, 2016, at which she reviewed Plaintiff's history, noted an "appropriate" affect, "euthymic" mood, and "low" level of risk. (*Id.* at 632–33.) On June 22, 2016, Dr. Saqi noted that Plaintiff's symptoms and problems on that date were "worsening" and that Plaintiff had a "moderate" level of risk. (*Id.* at 608.) Dr. Saqi doubled Plaintiff's dose of Effexor "to optimize treatment for anxiety." (*Id.*) At an August 3, 2016 examination, Dr. Saqi noted that Plaintiff "report[ed] that she [was] doing well since the increase in dose of Effexor" and also "report[ed] a decrease in frequency of panic attacks." (*Id.* at 610.) Plaintiff's affect was indicated as "appropriate" and mood "euthymic" (*id.* at 611), although Dr. Saqi also maintained that Plaintiff's "current level of risk" was "moderate" (*id.* at 612). On August 31, 2016, Plaintiff reported "an improvement in her symptoms of anxiety since the dose of [E]ffexor XR was increased," and Dr. Saqi indicated that Plaintiff's "current level of risk" was "low." (*Id.* at 613–14.) In subsequent examinations, Dr. Saqi again indicated that Plaintiff had an "appropriate" affect, "euthymic" mood, and "low" level of risk. (*Id.* at 617–18 (October 19, 2016),

12

620–21 (January 4, 2017), 623–24 (March 15, 2017).) On April 26, 2017, Plaintiff complained that she was "in a lot of pain," and Dr. Saqi noted that her current symptoms were "worsening" though her affect was "appropriate" and her mood "euthymic," and indicated a "moderate" level of risk. (*Id.* at 626–28.) On June 7, 2017, Plaintiff was again noted as having an "appropriate" affect, "euthymic" mood, and "low" risk, although Dr. Saqi recommended an increase in her dose of Effexor and noted that "[Plaintiff] [was] very hesitant about the increase." (*Id.* at 636–37.)

The record does not contain a functional assessment from Dr. Saqi.

### 2.    Dr. Sageman

Plaintiff testified at the hearing that she switched to another psychiatrist, Dr. Sharon Sageman, at Bueller[10] Psychotherapy at some point after June 2017.[11] (*Id.* at 43.) The ALJ's RFC determination does not cite to or otherwise mention Plaintiff's Bleuler Psychotherapy notes (*see generally id.* at 14–17), but the Court summarizes them below (*see id.* at 652–748).

At her intake at Bleuler Psychotherapy on October 26, 2017 (*id.* at 652), Plaintiff presented with an "anxious" attitude (*id.* at 673), a "normal/full range" affect that was "appropriate[] to content," and an "anxious" and "depressed" mood (*id.* at 674). The intake forms also noted that Plaintiff was "[u]nable to work because of severity of anxiety" and that Plaintiff "need[ed] help managing her health and mental health issues." (*Id.* at 681.) The form concluded with a "Diagnostic Formulation" that Plaintiff was "seeking treatment to continue medication (Effexor and klonopin) and to acquire positive coping skills to manage [her] depression and anxiety." (*Id.* at 682.) On November 20, 2017, Plaintiff saw psychiatrist Dr. Sageman, who noted that Plaintiff

---

[10] As indicated in Plaintiff's treatment notes, the facility is Bleuler Psychotherapy Center. (*Id.* at 652–748.)

[11] When asked how long she had been attending Bleuler Psychotherapy, Plaintiff replied, "I'm sorry. I don't know. It might be under a year." (*Id.*)

13

had an "anxious" mood and "normal/full range" affect that was "appropriate to content." (*Id.* at 702.) Dr. Sageman renewed Plaintiff's prescription for Effexor and klonopin, as Plaintiff reported taking both daily "for 2-3 years . . . with good result[s]." (*Id.* at 683, 705–06.) Dr. Sageman noted that Plaintiff's 2015–2017 treatment at the Jewish Board was "not completed: no goals met." (*Id.* at 685.) Plaintiff saw Dr. Sageman again on December 19, 2017, where she "reported feeling very stressed" and "agreed to continue current med[ications] and add coherent breathing 18 minutes bid[12] to reduce stress, insomnia, [and] [hypertension]." (*Id.* at 711.) On January 9, 2018, Dr. Sageman noted Plaintiff was continuing to take Effexor and clonazepam.[13] (*Id.* at 715.) On February 6, 2018, Plaintiff again reported as "very stressed" and "agreed to continue current med[ication], and to add coherent breathing in 18 minutes bid to reduce stress, insomnia, [and] [hypertension]. [Plaintiff] [did not] want to add more med[ication]." (*Id.* at 717, 721.) On March 6, April 3, May 1, May 30, and June 27, 2018, Dr. Sageman's evaluations noted that Plaintiff had ongoing "pain from FBM[,] herniated discs[,] [and] sacroiliac joint," and was "unable to tolerate" an increased dose of Effexor due to vertigo and dizziness. (*Id.* at 723, 728, 733, 738, 743.)

The ALJ's RFC determination did not cite to or reference any records from Dr. Sageman, nor does the record contain a functional assessment from Dr. Sageman.

### D. Duty to Develop the Record

An ALJ "has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted); *accord Nusraty v. Colvin*, 213 F. Supp.

---

[12] The Court infers that "bid" refers to the Latin phrase "*bis in die*," which means twice daily. *See Medina v. Buther*, No. 15-CV-1955 (LAP), 2019 WL 581270, at *8 n.11 (S.D.N.Y. Feb. 13, 2019).

[13] Clonazepam is the generic version of klonopin. *Clonazepam vs. Xanax: Is There a Difference?*, HEALTHLINE, https://www.healthline.com/health/mental-health/clonazepam-vs-xanax (last visited Sept. 23, 2020).

14

3d 425, 442 (E.D.N.Y. 2016); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (noting that an ALJ satisfies his duty to develop the record "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history'" of the plaintiff (quoting *Perez*, 77 F.3d at 48)). Furthermore,

> where a record contains no formal RFC assessments from a treating physician and does not otherwise contain sufficient evidence (such as well-supported and sufficiently detailed informal RFC assessments) from which the petitioner's RFC can be assessed, an "obvious gap" exists and the ALJ is obligated to further develop the record.

*Rosado v. Comm'r of Soc. Sec.*, No. 17-CV-2035 (PKC), 2018 WL 2229135, at *5 (E.D.N.Y. May 16, 2018) (quoting *Iacobucci v. Comm'r of Soc. Sec.*, No. 14-CV-1260 (GWC), 2015 WL 4038551, at *4 (W.D.N.Y. June 30, 2015)).

In this instance, there was an obvious gap in the record; aside from the brief letters from Dr. Saringer, the record does not include a psychiatric functional assessment from either of Plaintiff's treating psychiatrists, Drs. Saqi or Sageman.[14] Given the absence of a functional assessment that specifically addresses Plaintiff's psychiatric limitations, "the ALJ should have followed up with [Drs. Saqi and Sageman] to request supporting documentation or to obtain additional explanations." *Nusraty*, 213 F. Supp. 3d at 442. The Court thus finds that the ALJ erred where he did not solicit a functional assessment from either of Plaintiff's more recent treating psychiatrists after discounting the opinion of Dr. Saringer and instead improperly relied on his own

---

[14] The ALJ's decision indicates that Plaintiff's counsel submitted additional evidence that was not admitted into evidence because the timing of its submission did not satisfy the regulations. (Tr., at 10 (noting that, "[p]ost hearing, on July 25, 2018, [Plaintiff's] counsel submitted additional medical evidence. This did not meet the five-day rule as described below, and thus was not admitted into evidence"); *see also id.* at 11 (citing 20 C.F.R. §§ 404.935(b), 416.1435(b)).) However, the failure by Plaintiff's counsel to timely submit evidence into the record does not override the ALJ's affirmative duty to have developed the record to include an RFC assessment from a treating source.

medical opinion of Plaintiff's treatment notes as well as the opinions of three non-examining sources. *See Indelicato v. Colvin*, No. 13-CV-4553 (JG), 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2014) (noting that "an ALJ is not a doctor, and therefore is not equipped to make medical judgments"); *Beckers v. Colvin*, 38 F. Supp. 3d 362, 374–75 (W.D.N.Y. 2014) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination. Nor is it appropriate for an ALJ to substitute his own opinion for the findings of medical sources on the record." (internal quotation and citations omitted)).

Accordingly, the Court finds that remand is warranted in light of the ALJ's violation of the treating physician rule and failure to develop the record. On remand, the ALJ should obtain a proper psychiatric functional assessment from one or more of Plaintiff's treating psychiatrists.

### III. Plaintiff's Self-Reported Limitations

Lastly, the Court notes that the ALJ erred where he discounted Plaintiff's testimony as to her limitations. In his RFC determination, the ALJ summarized Plaintiff's hearing testimony, in relevant part, as follows:

> The claimant resides with her eleven-year-old son. She takes him to school and after school to the park and to movies. She is able to do her own laundry and cook. She shops with a friend as she does not want [to] be alone among people. She last drove in 2013, and presently relies on taxis. The claimant reported that she spends her time praying, reading, and watching television. She is visited by friends.
>
> The claimant further testified that she is able to sit, stand for a few minutes at a time, and can walk ½ block. She stated that she is unable to lift very much weight.

(Tr., at 15.) After summarizing her testimony, the ALJ noted that Plaintiff "has been treated for pain of the lumbar spine" and concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

16

consistent with the medical evidence and other evidence in the record." (*Id.* at 16.) The Court disagrees with this conclusion.

Plaintiff testified at the hearing that she "suffer[s] from PTSD, . . . anxiety disorder, [and] panic attacks" as well as "two herniated disks," and that "something [was] wrong with [her] sacroiliac joint as well. Sitting too long or standing too long [was] very painful for [her]." (*Id.* at 41.) Plaintiff testified that she could sit or stand for only "[a] few minutes at a time" because of the pain, that she could walk "half a block," and that she could lift "[n]ot much" because "[her] back [was] in very bad condition." (*Id.*) Plaintiff testified that she "was getting physical therapy five days a week" and had epidural steroid injections in her back some eight to nine months prior. (*Id.* at 42.) With respect to her daily activities, Plaintiff testified that, while she might do household chores such as laundry, "[a] lot of times truthfully I lay on the couch. . . . Usually a friend will take me food shopping, because that's a difficult task for me." (*Id.* at 45.) Plaintiff noted that, for excursions such as the movies, "I tolerate it for my son. I don't love it, but I do it for him, and it's not that often." (*Id.* at 49–50.) Plaintiff further testified, "I do watch television. I read. It's hard to concentrate though. I lose — I probably have to read a page over and over." (*Id.* at 46.) She testified that she avoided public transportation, did not drive, and that "the Medicaid pays for [her] taxis to and from all [her] doctor's appointments." (*Id.* at 47.) Plaintiff further testified to suffering from panic attacks two to three times every day, and that they could be triggered by "the slightest thing. A loud noise. I feel like someone's going to hurt me." (*Id.* at 50–51.)

As discussed *supra*, while Plaintiff's psychiatric treatment notes indicate that Effexor and klonopin improved her symptoms (*see, e.g.*, *id.* at 610), "there is no medical basis for the ALJ's conclusion that [these] medication[s] sufficiently manage[] Plaintiff's PTSD and anxiety to a degree where [s]he can perform work-related functions." *See Collins v. Berryhill*, No. 16-CV-

17

6673 (PKC), 2018 WL 259282, at *7 (E.D.N.Y. Jan. 2, 2018) (citing *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)). Rather, Dr. Saqi's treatment notes indicate that Plaintiff's condition had fluctuated and perhaps worsened over time, as later notes reflect that Dr. Saqi wanted to increase Plaintiff's prescription of Effexor. (*Id.* at 636–37.) Dr. Sageman similarly indicated that Plaintiff's condition fluctuated despite a steady prescription of Effexor and klonopin, and that Plaintiff's prescription could not be increased due to other physical limitations of vertigo and dizziness. (*Id.* at 723, 728, 733, 738, 743.) As discussed previously, the record does not include a functional assessment from either treating psychiatrist upon which the ALJ can rely for a more specific medical opinion.

Moreover, "[a]n individual can perform [her] daily activities and still experience debilitating pain at the intensity and persistence and with the limiting effects she claims." *Larsen v. Astrue*, No. 12-CV-414 (CBA), 2013 WL 3759781, at *3 (S.D.N.Y. July 15, 2013) (citations omitted). "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (internal quotation and citations omitted).

While an ALJ is not "required to credit [a plaintiff]'s testimony about the severity of her pain and the functional limitations it cause[s]," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order), the ALJ does not have unbounded discretion in choosing to reject it; instead, the ALJ must determine whether a Plaintiff's statements as to her pain are consistent with

18

the objective medical evidence, *see Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) ("The issue is . . . whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain are consistent with the objective medical and other evidence." (citations omitted)). Here, the Court finds the ALJ committed reversible error where he discounted Plaintiff's testimony as to the limiting effects of her anxiety and pain, and mischaracterized her hearing testimony to support his RFC determination.

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion. The Commissioner's decision is remanded for further considerations consistent with this Memorandum and Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 23, 2020
         Brooklyn, New York